# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TINA W., <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | **ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS TO PLAINTIFF** <br><br> Case No. 2:18-cv-00938-EJF <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiff Tina W.,[1] pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on February 12, 2020, the undersigned concludes that substantial evidence supports the Commissioner's legally sound decision and therefore, AFFIRMS the decision.

## I. STANDARD OF REVIEW

The scope of the Court's review of the Commissioner's final decision is specific and narrow. As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*,

---

[1] Pursuant to best practices adopted in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the Court will refer to the Plaintiff by her first name and last initial only, as Ms. W., or as Plaintiff, in this Order.

139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, this Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The Court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

## II. BACKGROUND

Ms. W. applied for benefits in December 2014 and March 2015, alleging disability beginning September 2014, due to back and leg injuries and migraines (Certified Administrative Transcript ("Tr.") 211-218, 270).[2] She had past relevant work as a cashier/clerk (Tr. 270).

After a hearing (Tr. 37-73), an administrative law judge ("ALJ") issued a January 2018 decision finding Ms. W. not disabled (Tr. 7-22). The five-step sequential evaluation for assessing disability directs the ALJ to consider: 1) whether the claimant is currently working; 2) if the claimant has a severe impairment; 3) if the impairment(s) meets or medically equal an impairment listed in Appendix 1; 4) if the impairment(s) prevents the claimant from doing past relevant work; and 5) if the impairment(s) prevents the claimant from doing any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). Here, at

---

[2] On appeal, Ms. W. does not contend that migraines caused disabling symptoms and has therefore waived any such argument. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

2

step two, the ALJ found that Ms. W. had the following severe impairments: degenerative disc disease of the lumbar spine, post discectomy and fusion surgery; right lumbar spine radiculopathy; and migraine headaches. *See* 20 C.F.R. §§ 404.1521, 416.921. However, the ALJ found that Ms. W.'s severe impairments did not meet or medically equal the severity of any of the listed impairments in Appendix 1 (Tr. 13). Between steps three and four, the ALJ found Ms. W. had the residual functional capacity ("RFC") to perform light work, with the following limitations: occasional pushing and pulling with the right leg; occasional climbing of ramps and stairs; never climbing ropes, ladders, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and occasional exposure to extreme cold and hazards (Tr. 14). At step four, the ALJ concluded that Ms. W. could perform her past relevant light work as a cashier-checker (Tr. 17). Thus, the ALJ concluded that Ms. W. did not qualify as disabled under the strict standards of the Act (Tr. 17). The Appeals Council then denied Ms. W.'s request for review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a).[3] This appeal followed.

### III. DISCUSSION

On appeal, Ms. W. alleges the ALJ erred as a matter of law when she assigned little weight to treating physician Alan Colledge, M.D.'s opinion that Ms. W. could not lift over twenty-five pounds and could only sit or stand for a maximum of fifteen minutes (ECF No. 20, Ms. W.'s Brief ("Pl. Br.") 13-16; *see* Tr. 676). Ms. W. also appears to argue that the ALJ should not have given great weight to state agency physician Anita Johnson, M.D.'s opinion that Ms. W. could perform light work with postural limitations (Pl. Br. 15). Finally, Ms. W. contends that the

---

[3] Code of Federal Regulations (C.F.R.) citations are to the 2017 edition, which was in effect at the time of the ALJ's June 2017 decision.

3

ALJ erred at step four of the sequential evaluation process when she found that Ms. W. could perform her past relevant work as a cashier-checker (Pl. Br. 16-22). The Court will address each of the alleged errors in turn.

**A.    The ALJ explained her treatment of the medical opinions**

Ms. W. complains that the ALJ should have given more weight to Dr. Colledge's opinion and that she provided invalid reasoning for rejecting the opinion (Pl. Br. 13-16). But here, the ALJ was not required to give controlling or greater weight to Dr. Colledge's opinion because she found it inconsistent with other substantial evidence in the record, and her opinion explains how she reached her conclusion (Tr. 15-17). *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record" (quotation and citation omitted)).

The ALJ provided reasons for discounting Dr. Colledge's opinion (Tr. 15-17). The ALJ explained that she gave the opinion less weight because Dr. Colledge provided it seven months before Ms. W.'s alleged onset of disability, and the opinion did not relate to the period at issue (Tr. 16). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). The ALJ also noted that Ms. W.'s continuing "to work in some capacity" conflicted with Dr. Colledge's opinion. (Tr. 16-17 (referring to Tr. 12).) The ALJ further considered that Ms. W. requested vocational retraining from Dr. Colledge, that Dr. Colledge provided the opinion in connection with an unemployment application, and that treatment records frequently described that Ms. W. was looking for work—all suggesting that Ms. W. was not as disabled as she

claimed (Tr. 16-17). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (requiring an ALJ to consider whether an opinion is consistent with the record as a whole); *see also Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (finding ALJ reasonably discounted treating physician opinion where the physician recommended that the claimant pursue vocational rehabilitation); *Petree v. Astrue*, 260 F. App'x 33, 41 (10th Cir. 2007) (unpublished) (upholding ALJ's finding that claimant's continued search for work after being fired from his last job supported a finding he was not disabled). Thus, the ALJ gave good reasons to not give Dr. Colledge's opinion controlling weight.

Although not contained within the same section of the decision where the ALJ discussed Dr. Colledge's opinion, *see Endriss v. Astrue*, 506 F. App'x 772, 775 (10th Cir. 2012) (unpublished), the decision as a whole clearly explains that Dr. Colledge's opinion contradicted Ms. W.'s ability to be "very active," including walking, yoga, swimming, and caring for her elderly parents (Tr. 15; *see* Tr. 485, 488, 597). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *see also Castellano*, 26 F.3d at 1029 (claimant's daily activities provided a reason for rejecting treating physician's opinion that the claimant was totally disabled). Ms. W. also reported that she did heavy work, at times assisting her father getting out of bed (Tr. 15; *see* Tr. 597). And while Ms. W. complained of pain, physical examinations showed that she had good strength, a normal gait, and good range of motion (Tr. 15; *see* Tr. 488, 564). Thus, because the ALJ adequately explained her finding that Dr. Colledge's opinion was inconsistent with the record as a whole, Ms. W.'s claim fails.

The ALJ also had reason to give great weight to state agency physician Dr. Johnson's opinion that Ms. W. could do light work with postural limitations—namely that opinion related

to the relevant period and was consistent with the rest of the record (Tr. 92-94). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (requiring an ALJ to consider whether an opinion is consistent with the record as a whole); 1527(e)(2)(i) (noting state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"), 416.927(e)(2)(i); *see also Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (finding ALJ reasonably gave weight to opinion of one-time examining doctor where that opinion was the only medical evidence that pertained to the relevant time period). As discussed above, Dr. Johnson's opinion was consistent with Ms. W.'s ability to care for her parents, remain active, and regularly drive long distances for pain management visits (Tr. 15; *see* Tr. 287, 485, 492, 495, 597).

Ms. W.'s arguments to the contrary merely request that the Court reweigh the evidence in a light more favorable to her, which it may not do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2017) (holding that on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner); *see also Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (holding a court can find "no substantial evidence" only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence"). The Court, therefore, finds no error in the ALJ's assessment of the medical opinions in this matter.

**B.     Substantial evidence supports the ALJ's step four finding**

At step four of the sequential evaluation, based on vocational expert testimony, the ALJ found Ms. W. could perform her past relevant work as a cashier-checker (Tr. 17). *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (recognizing a vocational expert's testimony as substantial evidence supporting the ALJ's conclusion the claimant was not disabled). In her decision, the ALJ stated that Ms. W. could perform the job of cashier-checker as *actually*

performed (Tr. 17). However, as Ms. W. acknowledges, the ALJ likely meant to state that she could do her past relevant work as *generally* performed (Pl. Br. at 17-18 ("the decision must have meant to describe the occupation as generally performed")). In any event, any error was harmless because the relevant question is whether a plaintiff can perform her past work *either* as she actually performed it *or* as it is generally performed in the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (acknowledging that at step four, the claimant bears the burden of proving that he cannot perform his past work); *see also Hill v. Astrue*, 289 F. App'x 289, 295 (10th Cir. 2008) (unpublished) (citing Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *2); *Dumas v. Colvin*, 585 F. App'x. 958, 960 (10th Cir. 2014) (unpublished) (affirming the district court's finding "that even if the ALJ erred in determining [that claimant] retained the RFC for the line attendant job as he had actually performed it, any error was harmless because the ALJ also determined that [the claimant] could return to the line attendant job as the job is generally performed in the national economy"). The ALJ's finding is consistent with the Dictionary of Occupational Titles ("DOT") description of the cashier-checker job, which provides that light work requires "walking or standing to a significant degree" or "sitting most of the time but entails pushing and/or pulling of arm or leg controls" and/or "working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." DOT § 211.462-014, 1991 WL 671841.

Ms. W. contends that she could not perform the job of cashier-checker because O*NET and the *Bureau of Labor Statistics* describe the job as a medium exertion job that requires a great deal of standing (Pl. Br. at 21-22, fn. 60). This argument fails because agency regulations and rulings identify the DOT as a source of reliable job information for determining disability claims and as suitable for administrative notice. 20 C.F.R. §§ 404.1566(d), 404.1569a; SSR 00-4p,

7

2000 WL 1898704, at *2.  Agency policy provides that "[i]n making disability determinations, we rely primarily on the DOT (including its companion publication the [Selected Characteristics of Occupations, or SCO]) for information about the requirements of work in the national economy."  SSR 00-4p, 2000 WL 1898704, at *2.  In addition to relying on the DOT when evaluating a claimant's ability to do other work at step five of the sequential evaluation, *see id*. at *2-4, the ALJ relies on DOT job descriptions when evaluating whether a claimant can perform her past relevant work "as ordinarily required by employers throughout the national economy" at step four.  SSR 82-61, 1982 WL 31387, at *2; *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  Thus, ALJs must consider conflicts with the DOT because of its unique role as the primary source for occupational information in disability determinations.  *See* SSR 00-4p, 2000 WL 1898704, at *2.  The same requirement does not apply to the O*NET or Bureau of Labor publications.  These sources are not on par as authoritative with the DOT, and they do not replace the DOT for Social Security purposes.[4]  As such, the Court finds the ALJ's step-four analysis supported by substantial evidence.

## IV.  CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, the Court AFFIRMS it.

---

[4] *See* Occupational Information Development Advisory Panel, Finding Report:  A Review of the National Academy of Sciences Report A Database For A Changing Economy:  Review Of The Occupational Information Network (O*NET) at 8 (June 20, 2018), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINAL--Findings%20Report%20OIDAP%20062810.pdf (last visited Mar. 17, 2020).

DATED this 17th day of March, 2020.

                                                      EVELYN J. FURSE
                                                     United States Magistrate Judge